May it please the court, my name is Jay Keha, attorney for Jeff Clarine. Also on the briefing is Tom Arkush, who is not present at table. We have Ellison Matthews, representing Ms. Arenas, and Terry Ratliff, representing Mr. Whitlow. The way we're going to do this, your honors, is we're going to divide this up in a 10-5-5 strategy, or at least as close to that as we can get. Primarily, in the appeal, there are three substantive areas. I think one area, the last, some of the supplemental briefing we've done in relation to Blakely and Amaline and Booker will ultimately be resolved by the court's most recent decision, Amaline 2, which came out on June 1st. So I'm going to be very, very minimal with that at best, because I think the court has in mind probably what it wants to do with that. I think the decision is very clear. The next two substantive areas... I think I'll say on that, you can say whatever you want, but with respect to that point, maybe just counsel for each defendant can simply say what their position is in light of Amaline. Correct. And then we will take our view of that plus Booker and apply it to your case. Thank you, your honor. Well, I have another question in that regard. What case says that Booker is retroactive? Excuse me, your honor, I couldn't... What case says that Booker is retroactive? Well, I don't think... It applies to cases decided before Booker. I don't think there's necessarily a case that renders Booker retroactive, your honor. I think that's absolutely correct. You're familiar with Ring v. Arizona? Correct. In that case, the court held that the death penalty procedure established in Arizona was not retroactive. That's correct, your honor. So if that is not retroactive, why would Booker be retroactive? What I would state in that is I think the courts, I think all of the circuits, have wrestled with the issue of whether Booker is retroactive and how to apply that. I think in light of the situation at bar, it's a little different. I think if you were a criminal defendant five years ago, ten years ago, you filed a motion for habeas corpus or petition for habeas corpus or some type of state post-conviction relief, and you tried to somehow bootstrap that in, it would be completely inapplicable. In the situation at hand, however, we were still in the middle of deciding what all of these things meant. What does Aniline mean? What does Booker mean? And I think the fact that Mr. Clarin and Ms. Arenas and Mr. Whitlow have all essentially filed briefing on this matter prior to these matters becoming resolved, and while it's still in the appellate process, I think we're okay there, and that would be my position on that. Relating to the other two counts, I think both of the other two counts, two substantive areas interrelated, necessarily the question is what is sufficient for the purpose of determining what describes criminal charges appropriately within an indictment. Two counts in this case, count one was a conspiracy case. With conspiracy count, count 27 with relation to Mr. Clarin, and this is our appeal, is count 27 with essentially firearms enhancement. I think what we need to do is I would like the court to examine count one as written. I think it's very close. In fact, I think it's identical in almost every respect to the count contained in Cecil, which is noted in our briefing. Count one alleges that, again, an unknown date, but at least by 97 and up to a closing date of 15 May 2002, the date which is contained, the date of the superseding indictment, the defendant, 30 persons, known and unknown, did conspire with persons known and unknown to the grand jury to distribute and possess either cocaine, methamphetamines, or ecstasy. The count. May I inquire on that, please? Sure. Cecil, of course, is good law. The fact that it was put out in the 70s doesn't have anything to do with whether it's still good law. Correct. Although I sound like the trial court had some reservation about that point. However, there's two additional cases that I'm trying to reconcile and figure out what the rule is following Cecil. The second one was Miller, and it used language or approved language in the indictment that was beginning at least as early as. And then there was this Harrison-Philpott case, which says on a date unknown but as early as. And then all of them had an ending date, just like your indictment does. How do we review your indictment in light of all three of those cases? I think if you review all three cases, and I would include actually Tavelman in there as well. Tavelman has a definite beginning date and a definite end date, but there isn't that sort of nebulous beginning date there at the start. The way I would view Miller and Philpott as against Cecil, Cecil is essentially as a result of that end date being where the superseding indictment is filed. And there being no beginning date to any of that is completely nebulous. It's really no end in either direction essentially, because by the time you charge someone, their criminal activities are essentially done and over. I think it's a very narrow standard. I don't think Cecil is a standard that applies in most cases, but I do think it does apply in this case. Not only are we just talking about dates here, and the attorney for the United States, he would have this case viewed through the light of whether in fact definite dates can be ascribed or a definite date on one end and no definite date on the other. In this matter, we're talking about 30-odd defendants. We are talking about co-conspirators who are completely unknown. We are talking about nebulosity in its grandest sense. We are talking about three various types of drugs. We're talking about quantities unknown as listed in the indictment. It's nebulous from the beginning and it's nebulous from the end, and I think that's how I would define it. This is so egregious and so gross that it falls into that very narrow rubric which is defined in Cecil. One thing I'm not sure, it does have a beginning date between such and such and such and such, right? It does not. It states 1997, but it states by at least 1997. I think the way the indictment is written, you could certainly go back to 1995 and rope that in. Did it happen by then? Maybe it happened before then. I think it's vague. The fact that by the words you're worried about is by at least 1997. Absolutely. Absolutely. How about the end one? It does end. It does have an end date, and the date is the date the superseding indictment is filed, which essentially renders it off into infinity, I suppose, at least in the sense where all the defendants, known and unknown, are noted, because the trial has already started or the process, at least, is close to beginning at that point. It's nebulous and it's... But it does go, it ends at the time of the filing of the indictment. Correct. So there's a time. It's distinguishable from the other cases. Like you say, forever after that. Well, and I certainly agree there is an end date, but I do think it is distinguishable from some of these other cases where, in fact, you're talking a span, as entanglement, of four months. Here you're talking about an end date when, in fact, it really doesn't matter anymore once you reach the end date. It may as well be off into 2007 or 2009 or wherever. No. And we're talking... They would have to prove it's within that period. That is correct. That is correct. But by that point, I guess my argument would be all criminal activity is ceased and the conspiracy is by effect. It's all over at that point anyway. So I guess that would be my point. The indictment didn't confuse 27 defendants or 28. Why does it confuse three? Well... Why did 48 plead guilty on this indictment? Well, I think that's a good question, Your Honor. I think when the power of the United States is brought against you, I think you're quick to plead guilty. I think there are 27 people who got deals and 27 people who didn't want to go through trial. I mean, it is what it is, I suppose. And this leads into our appeal, and I'll just be brief with this. And the question we have is whether, in fact, it renders Count 27 insufficient because although 27 uses some language, uses that sort of nebulous contract-type language where any sort of event could be roped in, part of it refers to Count 1, the conspiracy, which was struck down in district court. And I think those factors that are listed in Cecil, the indictment must furnish the defendant with a sufficient description of charges to allow him to enable him to prepare his defense, to ensure he's prosecuted on the basis of facts presented at the grand jury, to enable him to plead jeopardy against the later prosecution, to inform the court of facts alleged so it can determine the sufficiency of the charge, those all get roped in. If the court strikes down Count 1, the defendant, in my case, Mr. Clarine, has significant doubts that arise. And I think the court in this case was, I think, was concerned about what do we do with all of this in the end. All of these same concerns. Is it predicated solely on this conspiracy activity, or there's other activity as well? It is absolutely not predicated on just the conspiracy. But I think once you strike the conspiracy out, it becomes difficult for the court then to ascertain what, in fact, it was predicated on in the first place. And it becomes difficult for defense counsel to mount an effective defense on the matter, because essentially the real reason that they're in court, all this discovery material, it's all gone. I don't want to cut you off, but if I don't, your colleagues might. Thank you, Your Honor. May it please the court, counsel. My name is Ellison Matthews. I practice out of Boise, and I represent Elsa Marie Arenas. You're going to have to keep your voice up. That's not a microphone. It'll work. Just keep your voice up. I'll try and keep my voice up, Your Honor. I want the court to recognize that I recognize that if you should rule against Mr. Clarine on the issue of the dismissal of the indictment, that our argument on that subject is probably moot. So you would have to uphold him in that regard to address the way in which the district court discussed and denied our motions for joining in the Clarine's motion to dismiss. I would first like to point out that technically we did not make a motion to dismiss the conspiracy count in the middle of the trial. What we did was join in Clarine's motion that was made three months before the trial even began. I would also point out that at the time we joined in that motion, the government did not object. And I would also point out that at the time we joined in that motion, the court was discussing the failure of the government to file a responsive brief to the motion, that being the reason that the motion had not yet been decided, and it was not until several days after we joined in that previous motion to dismiss count one that the government ever filed a responsive briefing. What the government wishes for this court to do is to give them a windfall from being tardy in addressing the motion to dismiss, because if the briefing had been filed prior to trial, and if the court had therefore been in a position to address that motion, there's just no question under the facts of this case that the court would have allowed Arenas and Quitlow the same relief on that motion. I would also point out that the analysis, the more lenient analysis given to our motions as opposed to Clarine's, is based on the theory that, from the cases cited, that there is some kind of sandbagging going on by the defendants by not appropriately filing that motion pre-trial, and to do it in the middle of the trial is inappropriate, and we think the facts of this case distinguish what we did in this case. I'd like to speak briefly to the district court's failure to give my client, Elsa Arenas, a minimum role in the offense, or at least some kind of lesser role in the offense. The district court analyzed her role in the offense with regard to her husband, Juan Carlos Jaime. The government in this case indicted 30 people. In the analysis by Judge Windmill below, to my recollection, he only discussed her role in the offense as it related to her husband. You must remember that there, at the tip of this alleged conspiracy, was a man by the name of Zavala, and then there were two sort of separate conspiracies that came from him because he was the supplier. Zavala provided product to, we euphemistically refer to it as product, but various types of narcotics to Leticia Lopez. Leticia Lopez, I think, got 27 years in this case. Leticia Lopez provided narcotics to Elsa's husband, Mr. Jaime, while Elsa was raising her kids and maintaining this household. It is unbelievable that this young woman, a young lady who I've referred to at times as more of a secretary to her husband than a drug dealer, although she was aware of much of the drug dealing that was going on, should be treated similarly to these other individuals. And you cannot isolate her and view her conduct with relation to a standard or numerous other drug conspiracies. The law, I believe it's Rochas Millan case, not sure I'm pronouncing that correct, requires that you view her conduct in comparison to the overall charges brought in this particular case against the individuals involved in this case. I believe the magic language is, quote, relative to all the participants in the criminal scheme for which she is charged. And that would involve 29 other co-defendants in this case. I think your time is up, because you've now gone way past your five minutes. I have just one question to clarify. Did you say that Ms. Arenas had filed a pretrial joinder in the 7C motion? No, Your Honor. Okay. I misunderstood then. Thank you. Thank you very much. If it pleases the Court, Terry Ratliff for Jabin-Whitlow. A couple things. The first is when we look at Judge Pregerson's question on the Booker issue, I think the case law is that since these appeals were pending, we don't necessarily have to go back to a retroactivity analysis. We can just say it's an issue. If they've preserved it, maybe, maybe not. But in Mr. Whitlow's case, if you look at your new Ameline decision at page two, you talk about left unresolved by Booker is a question of what relief is to be afforded if a defendant did not raise a Sixth Amendment challenge. And if you look at the record under seal, we submitted Jason's pre-sentence report and also the objection in response to the pre-sentence report. And in that objection, I repeatedly talked to the Court about the fact that all the evidence of drug weights and types of drugs was an issue that they were taking from Mr. Stiles and the police reports and not what was testified to. So in Mr. Whitlow's case, we did preserve a Sixth Amendment challenge, although we didn't couch it in that term. And that's why I want to draw that to the Court's attention. And specifically, Your Honor, you were asking, what do we want you to do? We want Mr. Whitlow, I want you to remand the case, send us back down there and get him re-sentenced. That's what I want in light of the new Ameline decision. The next issue I've got, when we talk about the Rule 7 challenge, Mr. Matthews and I joined the challenge in the trial, didn't do it beforehand. And I argued two times, judge, let it relate back like the rules of civil procedure to Rule 15. And both times, the judge shut me down. I found an Idaho case, didn't find any Federal case until last night. I'm glad it's the practice of law. I missed it last week. But I found a case. I just want to let the Court know about it. It's Felix v. Mayo. The easiest way to let us know about it is that the clerk does have little pieces of paper, and you can either send us a supplemental letter or you can fill out the case citation and make sure you provide a copy to your other counsel, U.S. attorney. We'll get a copy and we'll read it. That will work. Briefly, it's on a post-conviction relief case, but I think by analogy, it's got some bearing on this case. And I just want to mention, I don't think it's mentioned in any of the briefs, Rule 12b3b allows us to challenge the indictment at any time, not just prior to trial. So it says that we can challenge the sufficiency of the indictment at that time. And unless you have any questions, I'll step out of here so we don't lose up all our time. Thank you. Okay. Thanks. Your Honor, thank you for the opportunity to argue on behalf of the government in this case in which we allege that the district court improperly dismissed count one in violation of local rules that were not followed by defense counsel, and also at a time after the jury had found beyond reasonable doubt that the defendants had committed this crime. I think the number one thing I want to focus on today is the fact that the district court took, gave great weight to the fact that he believed that this indictment was open-ended on both ends. To me, that was one of the deciding factors. I believe this court recognizes through its questions today that that's not the case, that it ended May 15, 2002, when it was indicted. Mr. Clorine was in custody, everybody's in custody, approximately 30 defendants in custody. The trial work begins, discovery, all of that. There's no allegations, anything continued past that, and there's no evidence at trial that anything continued past that. It had an end. It also was couched a little bit differently than I think the court and counsel phrased it. It was couched in terms of, without knowing when it began, because it's difficult to determine that in any of these cases, existed at least between these dates, 1997 and the date of the indictment. It existed during that time period. That is what the government had to prove beyond reasonable doubt. That is what the jury found beyond reasonable doubt. Was that the wording, at least? I've kind of forgotten. That's kind of important. I believe the language I'm sorry, I should have had this right. Beginning on an unknown date, but existing at least between the dates of X and X. And I think that's a little bit different than what we were talking about before. So I think, number one, although district court wrestled greatly with this issue, because of the seasonal decision, the district court itself had great difficulty in arriving that decision and used language about doing so with reservations. The court had not found any case in the Ninth Circuit that it applied this rigorous of a standard to a finding in an indictment inadequate. He found it to be a close question. And he said that the Ninth Circuit case written 24 years ago should not be followed so rigorously. It says the government may well want to argue that it shouldn't be followed so vigorously, given the broader policy to open files that certainly has existed in this district. And finally, he said, I'm not sure I agree with that 1979 decision that's on the books. Your Honor, your Honors, I believe that the Miller cases and other cases I've cited in my brief change the nature of the law of conspiracy. In 1979, when Cecil was decided, Shabani had not been decided, the circuit court at that time believed still that Overdax needed to be alleged and proven beyond a reasonable doubt. The whole framework was changed. Rules regarding discovery, other rules that provide protections for defendants have changed. And I think the most troubling thing about this case is, and I think the reason why it must be reversed, is the court believed it had to look at that language in an entire, in a vacuum, without regards to anything else that was going on in the case. I thought the court went further. Your Honor, the way they defend themselves. I don't believe that's the case, Your Honor. I believe that the case, as this court has said on numerous occasions, that a defendant's notice of the charges is based on the indictment and all other disclosures made by the government. Discovery motions don't cure ineffective indictments. That's what I'm saying, Your Honor. It wasn't ineffective. It was an indictment that had been used many, many times. It's distinguishable from Cecil. The defendants had 2,400 pages of discovery and 29 of them. Discovery doesn't cure it. Discovery didn't cure it. I don't believe it cures a improper indictment, which the argument, Your Honor, isn't improper. It was within this specific time. It had clearly an ending date, which the district court found it didn't. It said it was open-ended on both ends. What if there had been allegations of things that occurred in the conspiracy in 1996? That would be before the at least 1997. Could that have been considered? The court raises an interesting issue. I don't think it was briefed on either side. If we alleged an indictment, a conspiracy that occurred within one year period, a specific date and ending, January 1st to December 31st, and, in fact, through the course of the trial there's evidence that precedes the conspiracy as alleged in the indictment, that evidence, pursuant to Ninth Circuit authority, allows you to put that evidence on to establish the beginnings, the existence of the conspiracy within that particular period of time. That's the law as I understand it. And so whether it's charged open-ended at the front end or not, the defendants always run the risk of the government, with the court's permission, putting on evidence about the beginnings to prove that that conspiracy did in fact exist. And I believe, Your Honors, that the other issue about the Bill of Particulars – two other issues I want to make quick points on. Bill of Particulars told the government and told the defendants that you not only have 24 pages of discovery, you have an open file. You know everything the government knows. You know what every witness said. You know what every surveillance report said. You know what every lab report says. Open files don't fix an insufficient indictment. No, no, Your Honor. I'm not saying it did. But the goals of both are the same. If the goal of a Bill of Particulars is to provide the defendants with notice, and the district court finds they had everything they needed to know, and then on the other hand – One of the problems we have is that both of those circumstances were true in Cecil. And the court said that the Bill of Particulars and the open file didn't solve the problem. Didn't, in that case, correct, Your Honor. But again, there have been intervening cases such as Miller that have further defined that. I'm not saying Cecil's bad law back then, but as the courts defined it along the way, certainly in the age of full disclosure discovery, the – But that was true then, too, the open file and also the – see, I'm worried about how we can – we could not apply Cecil where those two things were both in existence then. I think, number one, Your Honor, you don't apply Cecil because this is distinguishable. It is not open-ended in both directions, as I think the courts recognized. Secondly, this Court, this Ninth Circuit, in numerous other cases, has said the defendants are put on notice about the indictment and other disclosures. Can I tell you what bothers me about this is, apart from the substance, which I think there's some location vagaries in this indictment as well, but I'm bothered by the court not ruling on this until you're, I don't know, how many days into Trial 5 or – It was 5. So let's think about how this would have worked normally. You would make your motion – they would make their motion, and then let's say you lose. Then you have the option at that point to go back and do some kind of superseding indictment or whatever, correct? Right. But that didn't happen. So now we're in the middle of trial. If we were to reverse, just hypothetically, the trial judge's decision, then what happens now? It goes back – For resentencing. For – Mr. Clearing would be resentenced based upon the conspiracy count and the firearms charge, as were his co-defendants. I think you raise a really good point, Your Honor, about how this happened. The rules are there for a reason. The rules on pretrial motions are there to not waste judicial time and taxpayer money. The rules are made so that these kind of dispositive motions must be made before jeopardy attaches and we go through a big, long trial. The defendant filed the motion, but he didn't follow the local rules as far as getting that motion heard. And, in fact, counsel said something about sandbagging. I don't know any other reason why that case would not have been argued vigorously by the defense before he went through the trouble of picking a jury and – Well, you didn't file your reply brief before the jury had been picked. That's right, Your Honor. You can't blame them for everything. There's a reason for that, Your Honor. Well, let's hear it. The reason for that is the defendant had confessed by that time to conspiring with those people and signed a plea agreement saying he conspired with them by that time. We were still in negotiations for pleas by these defendants up to trial and through trial until this issue was raised. Until this issue was raised, there were discussions with at least two of the defendants about pleas to count one. So you were dissatisfied with the pre-negotiations? No, no, no, no. My plea agreement that I'd set forth was signed by the defendant. And I knew that because counsel sent me a letter saying that it had been signed. No, no. You have an opportunity. What? I just want to ask one last question here. If this case were to go back, if, and assuming the guidelines have some broad application, what would be the difference in sentence? The guidelines on Mr. Clarine may not make a whole lot of difference because Mr. Clarine's convictions on count one and count 27 are both statutory minimums, which would be a 17-year sentence. So if the court didn't go above that, those are statutory. Seven or 17? It's 17. But his sentence now is eight. Is eight for a month. But the statutory minimum for both those are 17, seven and ten. Well, it would be a big difference if it gets 17 as opposed to eight. Eight, which he should have gotten in the first place. Well, so the answer to my question is not that it might not make a big difference to Mr. Clarine, but it might make it a decade of difference to Mr. Clarine in his sentence. And rightly so. Not whether it's right or wrong. It's a factual question. So when we ask a factual question, we trust that the lawyers are going to give us a factual answer. We know you have a position to argue, but we're trying to understand all the factual underpinnings so we can make a fair decision. I understand. And in that regard, Your Honor, Mr. Clarine's sentence is vastly different than people like him and less culpable than him because the court hesitantly dismissed that count. Now, the other thing that the court raised and Your Honor raised about the timing of this is had things proceeded along the way they should, dispositive motions filed and argued pretrial, the court's own rules, the statutes in this case law, says that if the indictment's defective, the remedy is not throw it out and the defendant goes home. The remedy is to decide whether or not the defendant will stay in custody or be released pending an indictment that cures that problem, which would have been fine. A lot of times we charge indictments to alleviate potential issues that may come up on appeal. We make those decisions to kind of cut it off at the pass, so to speak. Had this case been argued and we had lost, we would have been in no worse position because other than we'd have to take time to go back to grand jury and maybe cut off that beginning from an unknown time, and otherwise the indictment would be exactly the same. Specificity-wise, we specified that it was over 500 grams. We specified 30 defendants. I mean, that's pretty specific for saying how many people you conspired with. And I think finally the court misapplied Cecil because the court thought it was open-ended in both directions. Now, just a couple other things, Your Honors. Wouldn't it be an obligation on both counsel to say we've got a very important motion that hasn't been decided prior to trial? Yeah. Your Honor, and that's my fault. The fact I did not recognize there was this pending motion out there in the middle of plea negotiations was my fault. But it's also counsel's fault. It was his motion. His motion could have caused him not to even have to go to trial. His motion could have caused him to be released from custody three months earlier had his motion been successful. I'm not trying to put the blame all on counsel, but that was his motion. And it was pending, and it was a dispositive motion, and the rules required that he set it up for a hearing, he notify us, and he get it. And in fact, our local rules, I think this is really important, our local rules say if counsel does not do that, it doesn't say whether I file a response or not, if counsel does not do that, the motion is deemed withdrawn. And I've cited that in my brief. If counsel does not do what? If counsel does not do all the things cited in the rules, which I think are set forth really well in the brief. Is that a ground that the judge invoked here? No, the judge didn't. So if the judge didn't invoke that then on appeal, since no one has argued that as the basis for reversal or upholding this, then I don't think we would appropriately consider it. No, I understand. Just a couple other things briefly. I think the issues relating to Mr. Whitlow and Ms. Arenas are very clear in the brief. I don't want to waste the Court's time on those issues. Does the government have a position, given Ameline and given that these appeals were pending, you've probably already begun to see some returns to the district court in a number of cases. Is it your position that these cases fall in the same rubric as the others and we ought to return them for the judge to let us know one way or the other? I think our position, Your Honor, is the same we took in the en banc petition, which is that this Court would decide plein air when it wasn't raised before. But given Ameline, I understand that you will have a limited remand back to the district court, if I'm reading it correctly, not a resentencing, but a limited remand for the Court to say this was proper. Yes or no. Yes or no. And that's what I expected. It seems in terms of, you know, not to forestall any argument that anybody wants to make on specific sentencing issues, but that under Ameline, I know the government hasn't waived its position in general, but given the language in Ameline that we would engage in a limited remand here. Do you agree with that? I think that's what the Court will do in light of that case. All right. Your Honor, finally, of course, if this Court agrees with us that the district court hyper-technically utilized Cecil to invalidate an indictment after a jury conviction, then a number of other issues are resolved. Clarine's firearms issue is resolved. He didn't file a motion to dismiss Count 8 ahead of time. It was predicated on other drug crimes. In fact, it was predicated on a specific day in his life in which he assisted in the pistol whipping of a co-defendant. So you're saying that 27 still survives because you've got the underlying? It survives regardless, Your Honor. But I couldn't more strenuously, any time I've been before this Court, argue that the district court was just wrong. It was not in the ‑‑ it does not make sense. Cecil is an anomaly in this case. It is ‑‑ our case is distinguishable from Cecil because of the not open-ended in both directions, and we ask this Court to seriously consider reversing the district court and allowing Mr. Clarine's conviction, jury trial conviction, to stand as well as those of his colleagues. What do we do with Reynos and Whitlow when the rules say that an indictment can be raised at any time? Your Honor, it's not all that uncommon that we find conflicting things going on in the statutes and the rules. I view the rules as stating the method to do that. Well, of course, it wasn't an issue so much that they thought it. They and 25‑plus others didn't see a problem because that's the way the indictments are done in our district. In fact, they're done in that case precisely because of a previous appellate decision that was unpublished that affirmed exact language that's in this indictment. It was my case. That's a very good reason not to rely on them. But I think, Your Honor, that that ‑‑ No, we're not ‑‑ I don't think you've answered my question. What do we do about the fact that the rules say that a challenge to the indictment can be raised at any time? I think, Your Honor, when a motion has been filed pretrial, which is three months before trial, counsel has a chance to look at it and study it. They get a copy of it. They choose not to join or file their own motions and wait until after the jury is selected in a me‑too motion, then that should be looked very disfavorably by the court. But isn't that allowed by the rules? You know, Your Honor, I didn't think about that particular issue. I'm not even sure where that's coming from, that language. I'd have to take a closer look at that. If the Court doesn't have any questions for me, I'll reserve my last 15 seconds if that's okay. Well, I think we've kind of exhausted the subjects. Apart from sentencing issues, I'll give defense counsel two minutes to share for any closing rebuttal. Your Honor, I just wanted the Court to know our position on the Ameline issues. What we're dealing with there is unpreserved Booker issues. You want to remand? Well, I think the case law that now exists in this district requires it because the record before this court ‑‑ You know, amazingly, I think you both agree on that. I agree on this one, so I'd keep moving. It's maybe the only thing that everyone can agree on, so don't look a gift horse in the mouth. May I just volunteer one thing to the Court? Please. Counsel for the United States makes the point quite emphatically that the local rules of procedure were violated because the motion was not nosed up in due time, et cetera, et cetera. This was already addressed by the trial court. And I would refer you to our second supplemental excerpt at page 3. The court stated basically the effect, he was sorry, the court was in fact sorry the jury had been empaneled, but I will also say the government had not responded to the motion by way of briefing until we invited them to do so after the jury was empaneled, and so I'm going to share the blame on that score. Once Mr. Clarion's constitutional rights kicked in, any of the local rules, any of these local procedural things becomes a moot point. And in fact, his rights, his constitutional rights, they kick in, and they can't be overweighed and outweighed, and the court's already considered that. Thank you. Mr. Ralliff, do you have anything further? Just briefly, Judge, I just don't want the court to decide this issue on these motions in a vacuum. If you take a look at our excerpt of record at page 163, we've got a superseding indictment file. Then at page 174, we've got an order continuing the trial. At page 178, 179, we have another order continuing the trial. And then again at 181, we have a third order continuing the trial. So it's not that this was set. We had a target date when we went. We had 30 defendants, and we had numerous continuances. You mentioned about the ability to raise a challenge to the indictment at any time. Yes. For opposing counsel, what rule? What's the number of the rule? If you look at Rule of Federal Criminal Procedure 12, little b, 3, capital B, and it says a defect in the indictment at any time while the case is pending, the court may hear a claim that the indictment fails to state an offense. Thank you. The case of United States v. Clarine is submitted. Thank you to counsel for perseverance in waiting to be the last case on the calendar. We're adjourned for this afternoon. Thank you.
judges: Hug, Ferguson, McKeown